Wakulaw J.
delivered the opinion of the Court.
It is hard to resist the inference, from Harp’s refusal to deny the original corrupt agreement, and Neel’s remembrance of talk about the half of one per cent., apart from Chandler’s testimony, that the note now sued on was given for the balance of a previous note, which was originally untainted by usury, but was by subsequent agreement calculated at some usurious rate of interest. If this were so, the verdict should have been (without interest and without costs,) for the balance of the amount, which, when the second note was given, was really due on the first note calculated at the lawful rate of interest, after deduction from that amount of all payments since made, whether they were made in the name of a gift, or expressly to be applied to usurious interest, or towards principal and lawful interest, if they were really made, in consideration of the indebtedness subsisting under the second note.
Beyond this view, however, objection is here made to the instruction which authorized the jury, if they believed the note now sued on to have been originally free from all usurious taint, to deduct all payments since made, under any subsequent agree- *465 ntent for forbearance upon usurious terms, as if those payments had been made on the note, and to find the balance of principal and lawful interest with costs. To this objection the attention of this Court has been mainly directed. It was given doubtfully, and I concur in the conclusion that it was wrong.
Under the English Statutes, and our Act of 1777, (4 Stat., 863,) a security originally good was not affected by subsequent usury; (I Saund., 294;) but every forbearance of a pre-existing debt was considered a new loan; (Qrd. on Usury, 29;) and by taking usurious interest on the forbearance of a debt originally untainted, (although the security stood good, and the debt might be recovered with lawful interest,) the lender incurred the penalties, which, within a certain time, might be recovered against him in a qui tam action. Independent of the action for these penalties, the borrower could maintain no action to recover back usurious interest which he had paid, (1 Taunt.. 413.) until he came, as Lord Mansfield, adopting the Equity principles and language, said in Fitzroy v. Gevillim, (1 Term, 154,) “with clean hands,” having paid the principal and lawful interest; but in Chancery, (at least so long as the security remained in the hands of the lender,) all payments of excessive interest were carried to the account of principal and lawful interest, (Bosanquet v. Washwood, cases Temp. Talbot, 37;) and at law the excess paid over and above the whole principal and lawful interest, might be recovered back by the borrow'd’ as money unlawfully and oppressively extorted. See Doug., 471, 696 note; 8 East., 377; 20 Johns., 289.
Our Act of 1830, (6 Stat., 409,) repeals the clause of the Act of 1777, which made the contract and securities void, and the clause which imposed, for the offence of taking usury, the penalty of treble the sum lent, to be recovered in a qui tarn action, commenced in the lender’s lifetime, and within six months from the time of the offence; but leaves the prohibition of usury and the mode of proof, contained in the former act, unrepealed, and in substitution for the two clauses repealed, enacts as follows: “Every person lending or advancing money or other commodity upon unlawful interest, shall be allowed to recover in all cases whatsoever, the amount or value actually lent and *466 advanced; and the principal sum, amount or value so lent or advanced, without any interest, shall be deemed and taken by the Courts to be the true legal debt or measure of damages, to to all intents and purposes whatsoever, to be recovered without costs.”
In the construction of this Act, it was held in this Court, that in determining the amount which should be recovered upon a security tainted by usury, where sums intended to discharge the usurious interest agreed on had been paid, all the payments should be considered as payments jiro tanto of the principal originally lent. (Clark v. Hunter, 2 Spear, 35.) Our Court of Equity in the case of Caughman v. Drafts, (1 Rich. E. R., 404.) where, upon a bona fide judgment, payments of usurious interest had been made, directed that, all payments should be carried to the account of principal and lawful interest. This, it will be seen, is just what equity would have done before our Act of 1831, for equity enforces no penalties, and always extended relief to the borrower oppressed by usury, only upon his payment of the principal and lawful interest.
I avail myself of this reference to the case of Caughman v. Drafts, to acknowledge the error then pointed out in my opinion in the case of Clark o. Hunter, where I said in effect that usurious interest paid could be recovered back under the Act of 1777, only in an action for the penalty of the' treble value, and under the Act of 1831, could not be recovered back at all, although so long as any demand was urged by the lender upon the usurious contract, it might be considered as a payment. An examination of the cases before cited on this point, has satisfied me, that independent of the qui tzm action under ihe Act of 1777, by an action at law, before and since the Act of 1831, excessive interest paid might be recovered back, after full payment of the principal and lawful interest.)
Is it, however, to be now held in the Court of law, that if a creditor to whom a debt is bona fide due, shall exert over his debtor the influence of his situation, greater even than that of any ordinary lender over his borrower, and shall extort the payment or promise of excessive interest for further forbearance of the debt, he shall of course be entitled to recover the *467 whole debt and lawful interest, incurring only the risk of losing the unlawful excess? If all were paid to him, this excess only could be recovered back. If an untainted security,being negotiable, passed before its dishonor into the hands of a bona fide holder, the principal and interest of it could be recovered by such holder, notwithstanding large premiums in advance may have been paid to the lender upon agreements for forbearance made after the execution of the security.
But the forbearance of a pre-existing debt is a new loan, and upon this principle only can excessive interest upon such forbearance be regarded as usury; the legislature prohibits usury, and directs that in all cases whatsoever, only the principal sum or amount lent shall be recovered without interest or costs: the original security remains untainted, but it has been, as to the original parties, superseded by a new corrupt agreement, and therefore the amount lent on that new agreement, that is, the first principal and the lawful interest which was due when the new agreement took effect, shall be recovered, but without interest or costs.
It has been objected to this conclusion which the Court has attained, that under this view no action could be sustained on the original security, but the action should be on the new agreement., by which the money due upon the. pre-existing debt is supposed to have been paid, and again lent on usurious terms. The statute of 1831, however, does not in any case make the security void: whilst we permit, the action for tiic money tor-borne to lie on the old security, we admit evidences of the new agreement as of a collateral part, whereby the debtor damages are reduced: and thus we enforce the penalties of the Act of 1831, whilst we refuse to the untainted security the same effect which was given to it, under the Act of 1777, which prescribed larger penalties for taking usurious interest.
The acceptance in advance of a premium atan usurious rate for the future forbearance of a pre-existing debt already payable, or the agreement to forbear such debt at such rate, prevents then the recovery of interest on the principal originally untainted, beyond the day upon which the usury commenced or was stipulated to commence. Any corrupt agreement content- *468 poraneous with the making of the security, would taint the security itself. (Doug., 235.) The same principles embrace the payment of usurious interest for past forbearance, and the stipulation of forbearance upon usurious terms, to commence at some subsequent period, of a debt not due at the time of the stipulation. The acceptance of usurious interest for the past forbearance is evidence that there had been a corrupt agreement from the time at which the calculation of usurious interest commenced. A stipulation for future forbearance upon usurious terms, oí a debt growing due at lawful interest or without interest, if not rescinded before the usurious forbearance commenced, would, when such forbearance commenced, constitute a corrupt agreement then existing, and having relation back to the time from which, by the stipulation, the calculation of usurious interest was to commence. Whenever, by acceptance of usurious interest, or an agreement for it once actually operating, a corrupt contract has been established concerning the debt contained in a security originally untainted, the amount really due on the day when that; contract commences to operate, must be taken to be the principal sum, from which all subsequent payments must be deducted to ascertain the balance which shall be recovered without interest and without costs.
The motion for a new trial is granted.
Richardson J., Evans J., and Frost J., concurred.
Withers J., dissented.